## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-20220-CV-ALTONAGA
### MAGISTRATE JUDGE REID

PABLO GUZMAN,

        Petitioner,

v.

MARK INCH,

        Respondent.

_____/

### SUPPLEMENTAL REPORT OF MAGISTRATE JUDGE

This Cause comes before the Court upon the Petitioner's amended *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. [ECF No. 8]. The amended petition attacks the constitutionality of Petitioner's 2013 judgment of conviction in Case No. F10-004216, Eleventh Judicial Circuit of Florida, Miami-Dade County. A prior magistrate judge had issued an initial Report recommending that the petition be denied on the merits. [ECF No. 29]. Having reviewed the Petitioner's objections to the Report, the State's Response to the Objections, and Petitioner's Reply, and conducted an independent review of the case, the District Judge denied claim one and the first subclaim of claim two and referred the

1

remaining claims raised in the amended petition for a supplemental Report [ECF No. 52]. This Supplemental Report follows.

## I.     Background

A.     <u>State Court Proceedings</u>

The state charged petitioner with the attempted premediated first-degree murder of Nelson Puente with a deadly weapon. [ECF No. 17-1 at 3].[1] A jury found petitioner guilty of the lesser-included offense of attempted second-degree murder with a deadly weapon. [*Id.* at 47]. The trial court sentenced petitioner to 40 years' imprisonment with a 25-year minimum mandatory sentence. [*Id.* at 53-54].

Petitioner appealed, filing his initial brief on April 10, 2014. [*Id.* at 57, 76]. The Third District Court of Appeal ("Third District") affirmed without comment. *Guzman v. State*, 151 So. 3d 1256 (Fla. 3d DCA 2014) (table); *see* [ECF No. 17-2 at 43].

Petitioner then filed a petition in the Third District alleging ineffective assistance of *appellate* counsel. [ECF No. 17-2 at 45]. The Third District denied the petition without comment. [ECF No. 17-3 at 53].

---

[1] All page citations for ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

Meanwhile, petitioner filed a motion for postconviction relief under Fla. R. Crim. P. 3.850 in the trial court [*id.* at 57], which he supplemented. [ECF No. 17-4 at 4]. The trial court denied the motion in a written order. [*Id.* at 20].

Petitioner appealed. [*Id.* at 39]. The Third District affirmed without comment. *Guzman v. State*, 203 So. 3d 167 (Fla. 3d DCA 2016) (table).

B.   This § 2254 Case

Petitioner timely filed his § 2254 petition [ECF No. 1], which he amended [ECF No. 8]. The amended petition set forth these claims: (1) the trial court violated due process by precluding the defense from commenting on the victim's absence at trial; (2) ineffective assistance of appellate counsel (three instances); (3) ineffective assistance of trial counsel (seven instances); and (4) trial counsel ineffectively advised petitioner to reject a 10-year plea offer. [*Id.* at 5-18].

The state filed a response and supporting documentation. [ECF Nos. 16-18]. Petitioner filed a reply [ECF No. 24], and a notice of supplemental authority [ECF No. 26].

A prior magistrate judge report recommended that the amended petition be denied on the merits. [ECF No. 29].

Petitioner filed objections [ECF No. 32], to which the state responded [ECF No. 37]. Petitioner replied. [ECF No. 41].

The district court issued an order accepting in part the report and denying in part the amended petition. [ECF No. 52]. The district court denied claim one and the first subclaim of claim two. [*Id.* at 26]. The district court returned the remaining claims to the undersigned for report and recommendation. [*Id.*]

## II.    Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's

decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015). That is, "[a] state court's . . . determination of facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination." *Id.* (citation omitted).

Under § 2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

A contrastable situation occurs when the decision of the last state court to decide a federal claim contains no reasoning and there is "no lower court opinion to look to." *Id.* at 1195. In this case, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99 (citation omitted). Thus, in this scenario, "[s]ection 2254(d) applies even [though] there has been a summary denial." *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted). Because § 2254(d) applies, and because the last state court decision is unreasoned and there is no lower court decision to look through to, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision[] and … ask whether [they] are inconsistent with [Supreme Court precedent]." *See Richter*, 562 U.S. at 102.

### III.    Ineffective Assistance of Counsel Principles

To establish a claim of ineffective assistance of counsel, petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To prove deficiency, he must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

To prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Richter*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has the burden of proof on his ineffectiveness claims, *Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2254(d), *Pinholster*, 563 U.S. at 181.

## IV. Ineffective Assistance of Appellate Counsel Principles

*Strickland* "governs a claim of ineffective assistance of appellate counsel." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016) (citation omitted). "Under *Strickland*, a petitioner must show (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced the petitioner's defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

"A petitioner satisfies the prejudice prong upon showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [appeal] would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694); *see also Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011) (to prove prejudice, petitioner alleging appellate ineffectiveness must show that "the outcome of the appeal would have been different" (citations omitted)).

Consideration of ineffective assistance of appellate counsel requires the reviewing § 2254 court to "consider all the circumstances … from counsel's perspective at the time." *Dell v. United States*, 710 F.3d 1267, 1273 (11th Cir. 2013) (quoting *Strickland,* 466 U.S. at 689).

"Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments." *Id.* (citation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *see also Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." (citation omitted)). Under § 2254(d), double deference applies to this determination. *Overstreet*, 811 F.3d at 1287 (citing *Richter*, 562 U.S. at 105).

## V.    Legal Analysis

A.    Claim Two (Subclaim Two)

1.    *Petitioner's Argument*

Florida law requires trial courts to instruct the jury on "category one lesser included offenses." *State v. Montgomery*, 39 So.3d 252, 259 (Fla. 2010).  A necessarily lesser included offense is one whose elements are always included in the major offense. *Id.* Here, the parties do not dispute that the necessarily lesser included offense for attempted second degree murder, is attempted voluntary manslaughter. At the time Petitioner was tried, it was fundamental error for the trial court to fail to properly instruct the jury on the necessarily lesser included offense. *Id.*

Petitioner contends that appellate counsel ineffectively failed to argue that the trial court committed fundamental error when it omitted a definition for excusable homicide from the jury instruction for the lesser-included offense of attempted voluntary manslaughter. [ECF No. 8 at 8].

Petitioner principally relies on *State v. Lucas*, 645 So. 2d 425 (Fla. 1994) (per curiam). [ECF No. 32 at 6-7]. In *Lucas*, the defendant was convicted of attempted second-degree murder. 645 So. 2d at 426. Although the trial court instructed the jury on the lesser-included offense of attempted manslaughter, "the court failed to explain that [the defendant] could not be found guilty of attempted manslaughter if the evidence showed that the attempted homicide was justifiable or excusable." *Id.* Defense counsel did not object to the omission. *Id.* On appeal, the defendant argued

that "the court's failure to explain justifiable and excusable homicide as part of the attempted manslaughter instruction was fundamental error, requiring reversal." *Id.* The district court of appeal agreed and certified the case for review. *Id.*

The Florida Supreme Court approved the district court's decision. *Id.* at 427. The Court held that "failure to give a complete instruction on manslaughter during the original jury charge is fundamental error which is not subject to harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder." *Id.* Further, the Court noted that the "only exception [it had] recognized is where defense counsel affirmatively agree[s] to or request[s] the incomplete instruction." *Id.* (citation omitted).

Petitioner also relies on *State v. Spencer*, 216 So. 3d 481 (Fla. 2017). [ECF No. 26]. There, the Court "reaffirm[ed] [its] holding in *Lucas* that the failure to instruct on justifiable or excusable homicide as a part of the instruction on manslaughter constitutes fundamental error where the conviction is for manslaughter or a greater offense not more than one step removed, regardless of whether the evidence could support either." *Id.* at 486. Further, the Court "conclude[d] that a second exception to its fundamental error rule is warranted where a defendant expressly concedes that a homicide or an attempted homicide is not justified or excusable." *Id.* While *Spencer* was decided after Petitioner's appeal, the case shows

the continuing validity of the Lucas decision, at least until 2017 when *Spencer* was decided.

### 2.    *Factual Background*

The standard jury instruction permits the jury to return a verdict of attempted manslaughter by act if it found either justifiable homicide or excusable homicide. Fla. Std. Jury Instr. (Crim.) 6.6 (2010). At trial, when instructing the jury on attempted voluntary manslaughter, although the court instructed the jury on justifiable homicide, it did not instruct the jury on excusable homicide. [*Id.* at 157-60, 162-63]. Defense counsel asked for an instruction on excusable homicide. [ECF No. 18-7 at 91]. The prosecutor stated that such an instruction was improper because the evidence showed that petitioner did not accidently shoot the victim. [*Id.* at 91-92]. The court declined to give the instruction, simply stating that it "agree[d]" with the prosecutor. [*Id.* at 92]. Counsel did not object. [*Id.*] Furthermore, the court did not provide a definition for excusable homicide in any other instruction. [*Id.* at 151-66].

### 3.    *Respondent's Argument*

The state contends that there "was no evidence upon which the jury could have found that the shooting was accidental and, hence, excusable." [ECF No. 16 at 20]. Therefore, the state concludes that "appellate counsel could not be found

ineffective for failing to raise this issue as fundamental error on appeal." [*Id.* (citations omitted)]. The state also cites a handful of Florida cases--including *Lucas*--without clearly explaining their applicability. *See id.*; *see also* [ECF No. 37 at 6]. The state raised the same argument in its response to petitioner's petition alleging ineffective assistance of appellate counsel filed in the Third District. [ECF No. 17-3 at 7-9].

### 4.    *The First Report*

The prior magistrate judge found that, because trial counsel failed to object to the court's omission of the excusable homicide instruction, "[a]ppellate counsel's only option under Florida law [] would have been to raise this as fundamental error." [ECF No. 29 at 9]. But the magistrate judge found that "nothing about the facts of Petitioner's case suggested that the shooting was excusable." [*Id.*] Without explaining its applicability, the report cited in support *Franco v. Delva*, 901 So. 2d 901 (Fla. 4th DCA 2005).

### 5.    *Discussion*

Here, subclaim two presented a clearly meritorious issue for appeal. This case is materially indistinguishable from *Lucas*. Petitioner was convicted of attempted second-degree murder, which is one step removed from attempted voluntary manslaughter. *See Lucas*, 645 So. 2d at 427; *see also Ware v. State*, 112 So. 3d 532, 533 (Fla. 3d DCA 2013). Furthermore, the court failed to instruct the jury on

excusable homicide as a part of the instruction on attempted voluntary manslaughter. Under *Lucas*, this failure was fundamental error even if the evidence did not warrant an instruction on excusable homicide.

The exceptions to this rule enunciated in *Lucas* and *Spencer* are not present here. The state does not argue, and the record does not reflect, that defense counsel affirmatively agreed to or requested the incomplete instruction. Likewise, the state does not argue, and the record does not reflect, that petitioner conceded that the attempted homicide was not excusable. Rather, counsel requested the instruction and the court declined to give it. Such conduct does not implicate these exceptions. *Spencer*, 216 So. 3d at 486 ("[These] exception[s] [do] not apply where defense counsel merely acquiesce[s] to jury instructions that [do] not provide a full instruction on justifiable or excusable homicide." (collecting cases)).

The state's sole counterargument is faulty. The state contends that the trial court's failure to give this instruction was not fundamental error because the evidence did not warrant a finding that the shooting was accidental, and hence, excusable. This is a variant of the argument that the prosecutor raised at trial when defense counsel sought the instruction, as well as the same argument that the state raised in its response to the petition alleging appellate ineffectiveness. This argument is irreconcilable with *Lucas* and its progeny. As a result, the Third District could not have reasonably relied on this theory in silently denying this claim. *See generally*

13

*Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision[] and . . . ask whether [they] are inconsistent with [Supreme Court precedent]."); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557, 2559-60 (2018) (per curiam) (suggesting that, under *Richter*'s "could have supported" directive, habeas courts must consider "*reasonable grounds* that could have supported the state court's summary decision" (emphasis added)).

The cases cited by the state and the prior magistrate judge are easily distinguishable. *See generally Byrd v. State*, 216 So. 3d 39 (Fla. 3d DCA 2017); *Franco*, 901 So. 2d 901; *State v. Delva*, 575 So. 2d 643 (Fla. 1991). *Byrd* and *Franco* are inapposite for the reasons in the district court's order returning the remaining claims for report and recommendation. [ECF No. 52 at 17-18]. Furthermore, even if they were on point, *Byrd* and *Franco* are district court of appeals opinions that cannot overrule *Lucas*, a Florida Supreme Court opinion. *See State v. Washington*, 114 So. 3d 182, 185 (Fla. 3d DCA 2012) ("The District Courts of Appeal are required to follow Supreme Court decisions." (citing *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992))). Additionally, appellate counsel could not have relied on *Byrd* in not raising the *Lucas* issue because the Third District decided *Byrd* nearly three years after counsel filed the initial brief.

The state cites the Florida Supreme Court's 1991 decision in *Delva* for the proposition that "fundamental error occurs in an instruction 'only when the omission is pertinent or material to what the jury must consider to convict.'" [ECF No. 16 at 20 (quoting 575 So. 2d at 645)]. However, *Lucas* was decided after *Delva* and enunciated the *per se* rule that a trial court commits fundamental error if it fails to instruct the jury on justifiable or excusable homicide as part of a manslaughter instruction and the defendant is convicted of an offense not more than one step removed, irrespective of whether the evidence could support a finding of justifiable or excusable homicide. *See* 645 So. 2d at 426-27. The Third District, likewise, has consistently found fundamental error and reversed and remanded for a new trial in these circumstances. *Jimenez v. State*, 994 So. 2d 1141, 1143 (Fla. 3d DCA 2008); *Richardson v. State*, 818 So. 2d 679, 680 (Fla. 3d DCA 2002); *Perez v. State*, 610 So. 2d 648, 648 (Fla. 3d DCA 1992).

Notably, the Florida Supreme Court appears to have recently receded from *Lucas*'s *per se* rule. *See generally Knight v. State*, No. SC18-309, 2019 WL 6904690 (Fla. Dec. 19, 2019). Without expressly addressing *Lucas*, *Knight* "recede[d] from [Florida Supreme Court] precedent where a finding of fundamental error was predicated on Florida's jury pardon doctrine." *Id.* at *6. Further, *Knight* "recede[d] from [Florida Supreme Court] precedent applying [] fundamental error analysis . . . outside the context of erroneous jury instructions on the offense of conviction." *Id.*

However, *Knight* is inapplicable here because of its recent vintage. Petitioner filed his appeal in 2014 and the Third District decided it that very year. Under § 2254(d), *Strickland* requires courts to consider whether there is a reasonable argument that counsel's performance was not deficient. There is no reasonable argument that counsel could have relied on *Knight* in failing to raise the *Lucas* argument on appeal because *Knight* was not in existence in 2014. *See Strickland*, 466 U.S. at 690 ("[A] court deciding an [] ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*." (emphasis added)); *see also Overstreet*, 811 F.3d at 1285-87 (appellate counsel deficiently failed to raise clearly meritorious argument, partly because controlling cases underlying argument were "all decided . . . before [the defendant's] direct appeal"). No "competent [appellate] counsel . . . [] would have failed" to raise an argument based on law that "had been [] controlling for many years on the precise issue" and would have resulted in a new trial for petitioner. *See Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1330 (11th Cir. 2010) (per curiam).

Furthermore, it is unreasonable to conclude that the Third District could have relied on *Knight* to decide that appellate counsel's failure to raise the *Lucas* argument did not prejudice petitioner. The prejudice prong asks whether petitioner has shown a reasonable probability that, had counsel raised the *Lucas* argument, the outcome

of the appeal would have been different. *Knight* was decided five years after the Third District denied petitioner's direct appeal. There is no reasonable basis to infer that the Third District would have rejected a *Lucas* argument based on a nonexistent case. *Lucas* and its progeny would have bound the Third District. *See Washington*, 114 So. 3d at 185; *see also Levy v. Ben-Shmuel*, 255 So. 3d 493, 494 n.1 (Fla. 3d DCA 2018) (en banc) ("[A] three-judge panel of a district court should not overrule or recede from a prior panel's ruling on an identical point of the law." (citing *In re Rule 9.331*, 416 So. 2d 1127, 1128 (Fla. 1982))). Indeed, *Knight*, a 2019 case, had yet to be decided when the Third District denied petitioner's appellate ineffectiveness claim in 2014. [ECF No. 17-3 at 3].

True, it is theoretically possible that, even had counsel raised the *Lucas* argument, the Third District would have disregarded *Lucas* and its progeny and denied petitioner's direct appeal on a rationale like the one enunciated in *Knight* (or some other rationale). However, as applied here, the prejudice prong asks only whether there is a "reasonable probability" that the Third District would have reversed and remanded for a new trial had appellate counsel raised *Lucas*. The theoretical possibility that the Third District would have disregarded binding precedent and denied relief obviously does not mean that there was no reasonable probability that it would have granted relief. For, "[i]n making the determination whether the specified errors resulted in the required prejudice, a court should

presume . . . that the [Third District] . . . acted according to law." *See Strickland*, 466 U.S. at 694; *see also Overstreet*, 811 F.3d at 1288 (finding prejudice where, as here, "had . . . appellate counsel raised [a controlling state-law argument], *absent a departure from precedent*, [the defendant's] . . . conviction[] would have been reversed." (emphasis added)); *Bellizia*, 614 F.3d at 1330 (trial counsel ineffective because failed to raise argument based on law that "had been [] controlling for many years on the precise issue" and would have resulted in substantially lower sentence for client).

Having established that appellate counsel failed to raise the clearly meritorious *Lucas* argument, the question is whether it is clearly stronger than the argument that appellate counsel raised on appeal. It is.

Appellate counsel's sole argument was that the trial court committed prejudicial and reversible error by disallowing trial counsel from commenting on the state's failure to call the victim as a witness. *See* [ECF No. 17-1 at 69-74]. Such commenting would have included arguing to the jury that the state did not call the victim because it had concerns about his credibility. [*Id.* at 74]. This, in turn, could have bolstered petitioner's self-defense case. [*Id.*]

In support, appellate counsel contended that the victim had a "special relationship" with the state because he: (1) was the alleged victim; (2) received money from Florida's victim compensation fund; (3) allegedly needed petitioner's

self-defense claim to fail to ensure a victory in his then-pending civil lawsuit against the nightclub for negligence; and (4) was facing criminal charges, which allegedly made him more accessible to the state and beholden to the prosecution. [*Id.* at 69]. To buttress this argument, appellate counsel relied heavily on *Martinez v. State*, 478 So. 2d 871 (Fla. 3d DCA 1985).

This argument was substantially weaker than the *Lucas* argument that appellate counsel failed to raise. The trial court rejected defense counsel's request to comment on the victim's failure to testify based partially on the ground that the victim was "equally accessible to the Defense" and the record supported this finding. *See* [ECF No. 18-6 at 152-52; ECF No. 18-7 at 82]; *see also Haliburton v. State*, 561 So. 2d 248, 250 (Fla. 1990) (per curiam) ("In the instant case, the witness was equally available to both parties. We hold that the trial judge did not err in limiting further comment.").

The trial court also rejected the argument that the victim's receipt of money from the compensation fund constituted a special relationship [ECF No. 18-7 at 83], and *Martinez* does not suggest otherwise. Indeed, in denying claim one in petitioner's amended § 2254 petition, the district court found that the victim "belong[ed] in none of the [*Martinez*] categories" and that he was not unavailable just because he "was the only victim[] with an interest in a victim compensation fund." [ECF No. 52 at 8]. Appellate counsel did not identify any cases, much less

controlling ones, dictating a contrary conclusion, *see generally* [ECF No. 17-1 at 69-74; ECF No. 17-2 at 33-35], and the undersigned's research did not reveal any. In short, the *Lucas* argument is significantly stronger than the raised argument, which does not appear to be meritorious.

Another factor indicates that appellate counsel deficiently failed to raise the *Lucas* argument. As relief, appellate counsel sought a new trial [ECF No. 17-1 at 75], which is the same relief that prevailing on the *Lucas* argument would have afforded petitioner. Thus, appellate counsel's (ostensibly nonmeritorious) *Martinez* argument was both substantially weaker than the (clearly meritorious) *Lucas* argument and sought no greater relief. Thus, even under double deference, appellate counsel's decision to raise only that argument did not fall within the wide range of reasonable professional assistance. *See Overstreet*, 811 F.3d at 1287 (appellate counsel ineffective when failed to raise clearly meritorious argument and none of the raised arguments, though seeking greater relief, was "particularly likely to succeed").

As discussed above, *see supra* pp. 15-16, the Third District could not have reasonably determined that counsel's failure to raise the *Lucas* argument was not prejudicial. "But for appellate counsel's failure to raise [*Lucas*], the [Third District] would almost certainly have reversed [petitioner's] . . . conviction[] [and remanded for a new trial]." *See Overstreet*, 811 F.3d at 1287; *see also id.* at 1285 (had counsel

raised clearly meritorious issue, the defendant's "kidnapping convictions were likely to be reversed on appeal"); *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001) ("Where . . . appellate counsel fails to raise a claim on appeal that is so obviously valid that any competent lawyer would have raised it, no further evidence is needed to determine whether counsel was ineffective for not having done so.").

The district court instructed the undersigned to consider the applicability of *Pinkney v. Sec'y, DOC*, 876 F.3d 1290 (11th Cir. 2017). There, the defendant filed a petition in the Florida Second District Court of Appeal ("Second District") alleging that appellate counsel ineffectively failed to argue that the trial court committed fundamental error "in instructing the jury on the forcible felony exception to self-defense." *Id.* at 1294. The Second District denied without comment. *Id.* The federal district court denied this claim. *Id. Pinkney* held that the Second District's silent decision implicitly determined that the erroneous instruction was not fundamental error. *Id.* at 1295-97, 1299.

*Pinkney* is distinguishable. The Second District could have based its decision on the theory that the forcible felony exception instruction error was not fundamental because there was a reasonable argument under Florida law that the error was not fundamental. *Cf. id.* at 1299-1302 (holding in the alternative that the error was not fundamental). Here, by contrast, there is no reasonable argument that the excusable homicide instruction error was not fundamental. Again, *Lucas* enunciated the *per se*

rule that a trial court commits fundamental error if it fails to give the jury a complete manslaughter instruction and the defendant is convicted of an offense not more than one step removed, irrespective of whether the evidence could support a finding of justifiable or excusable homicide. Therefore, there is no reasonable argument that the theory that the excusable homicide instruction error was not fundamental "could have supported" the Third District's decision. *See generally Richter*, 562 U.S. at 102; *see also* [ECF No. 52 at 24 ("Read more narrowly, *Pinkney* can be confined to its facts.")].

True, the district court stated in its order that "[r]ead broadly, *Pinkney* suggests that an [appellate ineffectiveness] claim, based on . . . [a dispositive] issue of state law, must necessarily fail because a [habeas court] should always assume the [] state law [issue] was correctly decided [by the court that silently affirmed, even if that implicit determination certainly contravened controlling state law]." *See* [ECF No. 52 at 24].

As discussed above, the undersigned does not read *Pinkney* this broadly. However, assuming *Pinkney* so held, this holding would conflict with *Overstreet*. There, similar to *Pinkney*, the state court's denial of the appellate ineffectiveness claim was "unaccompanied by an explanation." *See* 811 F.3d at 1286-88 & n.5. Yet, unlike *Pinkney* broadly suggests, *Overstreet* did not assume that the state courts correctly decided the state-law issue underlying the appellate ineffectiveness claim.

22

Rather, *Overstreet* held that there was no reasonable argument that appellate counsel was not ineffective because counsel failed to raise a clearly meritorious state issue that would have resulted in the reversal of the defendant's kidnapping convictions and none of the arguments counsel raised was particularly likely to succeed. *See* 811 F.3d at 1287. *Overstreet* binds this habeas court. *Compare United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] court sitting *en banc*." (citations omitted)), *with Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("[A] district court in [the Eleventh] [C]ircuit is bound by [the Eleventh Circuit's] decisions.").

In sum, there is no reasonable argument that appellate counsel's failure to raise the *Lucas* issue was not deficient. Furthermore, the Third District could not reasonably have concluded that this failure did not prejudice petitioner. Therefore, the Third District's rejection of subclaim two was contrary to, and/or an unreasonable application of, clearly established federal law.

It may well be that because of the unique facts of this case a new trial may have the same outcome as the original trial, however, because the failure to properly instruct the jury on excusable homicide was fundamental error at the time of petitioner's appeal, and that error was not raised on appeal, petitioner's amended

petition should be granted as to subclaim two of claim two. The district court should issue a writ of habeas corpus instructing the Eleventh Judicial Circuit of Florida to vacate petitioner's conviction for attempted second-degree murder in Case No. F10-004216.

B.   <u>Claim Three (Subclaim Seven)</u>

This subclaim is a variant of the preceding subclaim. In this related subclaim, petitioner contends that *trial counsel* ineffectively failed to object to the omission of a definition for excusable homicide from the jury instruction for attempted voluntary manslaughter. Petitioner contends that there "is a reasonable probability that[,] had the jury been instructed on excusable homicide, [it] would have returned a verdict of a [] lesser offense or found [him] not guilty." [ECF No. 8 at 15].

Even though petitioner raised this subclaim as an ineffectiveness claim in his Rule 3.850 motion [ECF No. 17-3 at 75-81], the trial court rejected it on the procedural ground that it could have been raised on direct appeal [ECF No. 17-4 at 23 (citing, *inter alia*, *Teffeteller v. Dugger*, 734 So. 2d 1009, 1016 (Fla. 1999))]. In relevant part, *Dugger* concluded that two ineffectiveness claims based on counsel's failure to challenge jury instructions were procedurally barred because they "could have been raised on direct appeal" and Rule 3.850 motions were "not to be used as a second appeal[.]" *See id.* at 1015-16 & n.8.

In this § 2254 case, the magistrate judge rejected the state's argument that this subclaim is procedurally barred, reasoning that it "is one of ineffective assistance of counsel, and such claims are generally not cognizable on direct appeal." [ECF No. 29 at 21 n.11]; *see also* [*id.* at 14 n.8]. The district court approved the magistrate judge's determination that the subclaim was "procedurally proper." [ECF No. 52 at 4 n.4]. Accordingly, because the state courts did not address this subclaim on the merits, the undersigned reviews it *de novo. Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012) (citation omitted).

Even under *de novo* review, petitioner has not met his burden of showing prejudice on this subclaim. In rejecting it, the magistrate judge found that "the evidence in this case refuted any claim that the shooting with which Petitioner was charged was an accident." [ECF No. 29 at 21]. The undersigned agrees. Again, the evidence that petitioner did not act in self-defense was overwhelming. It included: (1) eyewitness testimony and surveillance video showing that petitioner walked away from the victim, retrieved a gun from his car, shot the victim five times from distance, left the scene, and later fled the county; and (2) testimony that the victim was unarmed and did not attack petitioner. [ECF No. 17-2 at 6-12 (citing trial transcript)]; *see also* [ECF No. 18-7 at 44, 47 (petitioner's testimony that he emptied his clip while shooting at the victim)].

Thus, the evidence did not permit a reasonable inference that petitioner committed the shooting by accident or misfortune. *See generally* Fla. Stat. § 782.03 ("Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner."). Furthermore, the trial court had already denied counsel's request for the excusable homicide instruction.

For these reasons, petitioner cannot show prejudice on this subclaim. Assuming counsel's failure to object was deficient, petitioner has not shown a reasonable probability that the court would have changed its mind and given the instruction. Also, even had counsel convinced the court to give the instruction, the instruction did not fit the facts of the case. Consequently, petitioner has not shown a reasonable probability that the instruction would have resulted in a more favorable outcome. Or, put differently, there is no reasonable probability that the instruction would have bolstered his self-defense claim.

Petitioner may contend that this conclusion is inconsistent with the conclusion that appellate counsel's failure to raise the related subclaim prejudiced him. This contention would be specious. As noted, the prejudice prong of appellate ineffectiveness claims considers whether there is a reasonable probability of a more

favorable outcome on appeal. *Overstreet*, 811 F.3d at 1287; *Hall*, 640 F.3d at 1236.

By contrast, the prejudice prong of trial ineffectiveness claims considers "prejudice

in terms of impact on the result of the trial instead of on the result of the appeal[.]"

*Purvis v. Crosby*, 451 F.3d 734, 740 (11th Cir. 2006); *see also Kormondy v. Sec'y,*

*Fla. Dep't of Corr.*, 688 F.3d 1244, 1274 (11th Cir. 2012) ("The prejudice prong

requires the petitioner to establish a reasonable probability that, but for counsel's

errors, the *outcome at trial* would have been different." (emphasis added) (citation

omitted)).

     In sum, this subclaim lacks merit.

C.    <u>Claim Two (Subclaim Three)</u>

1.    *Statutory Background*

     "Under Florida law a person is justified in using deadly force if he reasonably

believes that it is necessary to prevent 'imminent death or great bodily harm to

himself' or another." *Pinkney*, 876 F.3d at 1295 (quoting Fla. Stat. § 776.012(2)).

"But that defense is subject to exceptions, one of which is known as the forcible

felony exception, which provides that the 'justification [defense] is not available to

a person who . . . [i]s attempting to commit, committing, or escaping after the

commission of, a forcible felony . . . . " *Id.* (alterations in original) (quoting Fla. Stat.

§ 776.041(1)). "Florida courts have held that the forcible felony exception applies

only when the defendant is committing an independent forcible felony <u>separate</u> from

the one for which he is claiming self-defense." *Id.* at 1295-96 (citing, *inter alia*, *Martinez v. State*, 981 So. 2d 449, 454 (Fla. 2008)).

### 2.     *Relevant Background*

Regarding self-defense, the trial court instructed the jury that the

> use of deadly force is justifiable only if the defendant reasonably believe[s] that force is necessary to prevent eminent [sic] death or great bodily harm to himself while resisting [1] another attempt to murder him or [2] Pablo Guzman [i.e., petitioner] *was attempting to commit, committing or escaping after the commission of attempted first degree murder with a deadly weapon or aggravated battery*.

[ECF No. 18-7 at 158 (emphasis added)].

### 3.     *Petitioner's Argument*

Petitioner argues that appellate counsel ineffectively failed to ague that the trial court committed fundamental error by instructing "the jury on the [] forcible felony exception to self-defense." [ECF No. 8 at 8]. In support, he contends that the italicized language "reveals that the jury was [] instructed on the forcible felony exception to self defense." [ECF No. 32 at 9]. Further, he contends that the purported forcible felony instruction was improper because he was not charged with committing an independent forcible felony. S*ee* [*id.* at 10 (citing *Martinez*, 981 So. 2d at 457)]. Petitioner adds that this alleged error was fundamental. [*Id.* at 10-11].

### 4.     *Discussion*

Here, there is a reasonable argument that appellate counsel did not deficiently fail to raise subclaim three. *Martinez* "holds[s] that it is error for a trial court to read

the forcible-felony instruction to the jury where the defendant is not charged with an independent forcible felony." 981 So. 2d at 457. In so holding, *Martinez* determined that the forcible felony instruction informed "the jury that although it might conclude that [the defendant] acted in self-defense when he committed [the charged crime] against [the victim], [self-defense was not available] if the jury found that [the defendant] committed [the charged crime]." *Id.* at 453. Hence, "the forcible-felony instruction precluded the jury from finding that [the defendant] acted in self-defense." *Id.*

Here, in relevant part, the trial court instructed the jury that it could find that petitioner acted in self-defense only if he committed the charged crime. Plausibly, this instruction informed the jury that, to find that petitioner acted in self-defense, the jury had to conclude that he committed the charged crime. This instruction, though perhaps confusing, did not necessarily preclude the jury from finding that petitioner acted in self-defense. Arguably, the jury could have found that petitioner committed the charged crime but that he acted in self-defense. This possibility is not entirely inconsistent with a claim of self-defense. *Cf. id.* ("[W]hen a defendant asserts a claim of self-defense, he admits the commission of the criminal act with which he was charged but contends that the act was justifiable."). Moreover, the trial court instructed the jury that the state had to prove beyond a reasonable doubt that petitioner did not act in self-defense. *See* [ECF No. 18-7 at 159-60]; *see also*

*Williams v. State*, 261 So. 3d 1248, 1252 (Fla. 2019) (plurality opinion) ("In a case where a defendant alleges self-defense, the State must prove that the defendant did not act in self-defense beyond a reasonable doubt." (citation omitted)).

In short, there is a reasonable argument that the trial court's ostensible forcible felony instruction was not erroneous under *Martinez*. Petitioner has not identified any case commanding a contrary conclusion. *See, e.g.*, [ECF No. 41 at 8-9].

Furthermore, even if the instruction were improper under *Martinez*, there is a reasonable argument "that fundamental error [did not] occur[] in the [underlying] case [] because [petitioner's] claim of self-defense was extremely weak." *See* 981 So. 2d at 456. Petitioner bases his contrary contention primarily on his own testimony [ECF No. 32 at 11], which the state's evidence and corroborative eyewitness testimony contradicted and whose credibility the jury evidently rejected in convicting him, *see, e.g.*, [ECF No. 17-2 at 6-12 (citing trial transcript); ECF No. 18-7 at 68-70, 148 (prosecutor's arguing that evidence of petitioner's subsequent "escape to Panama" undermined his claim of self-defense)].

Because there is a reasonable argument that the purported forcible felony instruction was not erroneous, and even if it were, there is a reasonable argument that the error was not fundamental, petitioner cannot show deficiency or prejudice on subclaim three. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (failure to raise meritless claim is not prejudicial under *Strickland*); *Freeman*

*v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim." (citation omitted)).

In sum, the Third District's rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

D.   Claim Three (Subclaim Three)

This subclaim is a variant of the preceding subclaim. Petitioner contends that trial counsel ineffectively failed to object to the trial court's alleged forcible felony instruction. [ECF No. 8 at 12-13].

Petitioner raised this subclaim in his Rule 3.850 motion. The trial court rejected it, concluding that "[t]he forcible felony jury instructions were not given in this case." [ECF No. 17-4 at 22].

This subclaim fails for the reasons in Part V(C)(4), *supra*. There is a reasonable argument that trial counsel did not deficiently fail to object to the alleged forcible felony instruction because it did not necessarily negate petitioner's self-defense claim. Even if counsel originally objected to the instruction as petitioner suggests [ECF No. 24 at 12], counsel reasonably could have concluded later that any objection would have been futile.

Likewise, the trial court reasonably could have concluded that the instruction did not prejudice petitioner. The instruction did not necessarily negate petitioner's self-defense claim and petitioner otherwise presented a self-defense case.

In sum, the state courts' rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

E.   Claim Three (Subclaim One)

During his opening statement, defense counsel stated that the jury would hear from the alleged victim that petitioner threatened to shoot him four times. [ECF No. 18-4 at 20].

Petitioner contends that this statement "negated the theory of self-defense that was to be presented to the jury at trial." [ECF No. 8 at 10].

Petitioner raised this subclaim in his Rule 3.850 motion. The trial court rejected it because: (1) the record showed that petitioner presented a self-defense case; and (2) the court instructed the jury that it had to decide the case on the evidence and the prosecutor's statements could not be considered in its deliberations. [ECF No. 17-4 at 20-21].

The trial court reasonably rejected this subclaim. Before opening statements, the court instructed the jury that it must base its verdict solely on the evidence (or lack thereof) and law and that the attorney's statements were not evidence and must

not be considered as such. [ECF No. 18-4 at 11-12]. Before both closing argument and deliberations, the court similarly instructed the jury. [ECF No. 18-7 at 105, 169-70]. The jury presumably followed these instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and petitioner has not shown otherwise. Furthermore, it is undisputed that petitioner presented a self-defense case. Therefore, the trial court reasonably concluded that petitioner could not show prejudice on this subclaim.

In sum, the state courts' rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

F.     Claim Three (Subclaim Two)

Petitioner contends that trial counsel ineffectively failed to call the victim as a witness. [ECF No. 8 at 11-12]. Petitioner's supporting allegations are not fully clear. Petitioner appears to allege that, had counsel called the victim, counsel would have been able to: (1) impeach him with prior inconsistent statements; (2) introduce evidence of his pending domestic violence, aggravated assault, and narcotics charges to show that he had a reputation for violence; (3) comment on the state's failure to call the victim as a witness during closing argument; (4) attack his credibility with prior *consistent* statements; (5) elicit testimony showing that the victim was the aggressor; and (6) show that the victim had "imposing size in relation to" petitioner. *See* [ECF No. 8 at 11; ECF No. 24 at 9-10; ECF No. 32 at 14; ECF No. 41 at 10].

Petitioner raised this subclaim in his Rule 3.850 motion. The trial court denied it, reasoning that the "victim would not be called for the sole issue to impeach him, and the victim could not be called to introduce his own reputation evidence." [ECF No. 17-4 at 21 (citing Fla. Stat. §§ 90.404 & 90.608)].

The trial court reasonably denied this subclaim. The trial court's rejection of supporting allegations (1) and (2) turned on its construction of the Florida evidentiary rules, which this habeas court cannot disturb. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." (citation omitted)). In any event, petitioner's conclusory and meandering arguments fail to show that this determination was unreasonable or insupportable.

Another flaw in this subclaim is that, although the victim was deposed before trial [ECF No. 18-3 at 113-25], petitioner has not clearly stated the content of his deposition, much less shown that he would have testified consistently with it. Therefore, petitioner's allegations that counsel would have been able to impeach the victim and elicit favorable testimony are unsupported and speculative. *See Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) ("[The petitioner] has not demonstrated prejudice from counsel's failure to call [a particular] defense witness, as [the petitioner] proffers no evidence to suggest that [the witness] would have testified favorably had his attorney questioned him." (citations omitted)); *cf. Aldrich*

*v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

Similarly, allegations (3) and (4) are conclusory. Petitioner has not clearly explained how calling the victim would have allowed counsel to comment on the state's failure to call him and attack his credibility with prior *consistent* statements.

Allegation (6) is immaterial because there was testimony from which the jury could have inferred that the victim was much larger than petitioner. [ECF No. 18-4 at 81; ECF No. 18-7 at 22]. And, to reiterate, petitioner presented a self-defense case.

On this record, the trial court reasonably could have concluded that counsel's failure to call the victim did not prejudice petitioner. Thus, the state courts' rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.[2]

G.    Claim Three (Subclaim Four)

This subclaim is a variant of subclaim one of claim two, which the district court denied. [ECF No. 52 at 9-11].

---

[2] This subclaim would fail even under *de novo* review. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [the Eleventh Circuit] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "If the record is not complete regarding counsel's actions, then the courts should presume that . . . what witnesses [defense counsel] presented or did not present[] [was an] act[] that some reasonable lawyer might do." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citation omitted). The record does not reveal why counsel did not call the victim. Thus, this subclaim lacks merit.

Petitioner contends that counsel ineffectively failed to object to the trial court's consideration of improper factors at sentencing. [ECF No. 8 at 13; ECF No. 24 at 13-14]. The trial court rejected this subclaim on the merits. [ECF No. 17-4 at 22]. Likewise, the district court found that "the trial court's references to Petitioner's 'responsibility' were directed at Petitioner's criminal conduct, for which he was being sentenced, and not Petitioner's proclamation of his innocence." [ECF No. 52 at 10]. Trial counsel did not deficiently fail to raise this "frivolous" objection. *See* [*id.*]

In sum, the state courts' rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

## H.   Claim Three (Subclaim Five)

Petitioner contends: "[T]rial counsel was ineffective for failing to object when the sentencing court imposed an illegal sentence . . . where the statutory maximum for attempted second degree murder was 30 years and the trial court sentenced Petitioner to 40 years with a mandatory minimum of 25 years." [ECF No. 41 at 13]. The trial court denied this subclaim, reasoning:

> [T]he trial court has discretion, under [Fla. Stat. § 775.087(2)(a)3. to sentence a defendant, who was found guilty of attempted second degree murder with the jury finding of great bodily harm, between twenty-five (25) years to the maximum of life, even though traditionally the statute should have been capped at thirty (30) years['] state prison.

[ECF No. 17-4 at 22 (citing *Mendenhall v. State*, 48 So. 3d 740, 750-51 (Fla. 2010))].

In *Mendenhall*, the jury convicted the defendant of attempted second-degree murder with a firearm. 48 So. 3d at 743 (citations omitted). "The jury also found that during the commission of the offense, [the defendant] was in possession of a firearm, discharged a firearm, and inflicted serious bodily injury." *Id.* The defendant received a sentence of thirty-five years' imprisonment with a 35-year mandatory minimum sentence. *Id.* at 743-44. This sentence, which was pursuant to Fla. Stat. § 775.087(2)(a)3., exceeded the otherwise applicable statutory maximum of thirty years under Fla. Stat. § 775.082(3)(b). *Id.* at 744-45. *Mendenhall* held that "under section 775.087(2)(a)3., the trial court has discretion to impose a mandatory minimum within the range of twenty-five years to life." *Id.* at 750. "Consequently, [the defendant] was properly sentenced to thirty-five years with a thirty-five-year mandatory minimum, notwithstanding the statutory maximum of thirty years contained in section 775.082." *Id.*

The trial court's determination that petitioner's sentence of forty years with a 25-year mandatory minimum was proper under *Mendenhall* binds this habeas court. *See Richey*, 546 U.S. at 76. The rule that a state court's interpretation of state law binds a habeas court applies to decisions of a state trial or postconviction court. *See Chamblee v. Florida*, 905 F.3d 1192, 1196-98 (11th Cir. 2018); *Branan v. Booth*,

861 F.2d 1507, 1508 & n.1 (11th Cir. 1988) (per curiam); *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013).

Furthermore, the trial court's reading of *Mendenhall* was not unreasonable. Like the defendant there, petitioner committed attempted second-degree murder and possessed and discharged a firearm, causing great bodily harm. [ECF No. 17-1 at 47]. Also, his sentence of forty years with a 25-year mandatory minimum arguably falls within § 775.087(2)(a)3.'s range of twenty-five years to life.

True, as petitioner notes, the Florida Supreme Court later clarified that, while Fla. Stat. § 775.087(2)(a)3. "prevails over the general sentencing maximums," "[t]here is no statutory authority for the additional term of years beyond the selected mandatory minimum under [§ 775.087(2)(a)3.]." *Hatten v. State*, 203 So. 3d 142, 146 (Fla. 2016). Thus, § 775.087(2)(a)3. does not empower a court to sentence a defendant convicted of attempted second-degree murder with a firearm that he possessed and discharged, causing great bodily harm, to a 40-year term with a 25-year mandatory minimum. *See id.*

However, where *Hatten* was decided in August of 2016, petitioner was sentenced in June of 2013. [ECF No. 18-8 at 1]; *see also Geter v. United States*, 534 F. App'x 831, 836 (11th Cir. 2013) (per curiam) ("It is well-settled that an attorney's failure to anticipate a change in the law will not support a claim of ineffective assistance of appellate counsel." (citing cases)).

Petitioner contends that, before sentencing, the Second District had distinguished *Mendenhall* and held that, once a trial court imposes a mandatory 25-year term under § 775.087(2)(a)3., it cannot "exceed the thirty[-]year maximum penalty for a first[-]degree felony under section 775.082(3)(b)." *Sheppard v. State*, 113 So. 3d 148, 149 (Fla. 2d DCA 2013) (alterations in original) (citing *McLeod v. State*, 52 So. 3d 784, 786 (Fla. 5th DCA 2010)). *But see Hatten v. State*, 152 So. 3d 849, 850 (Fla. 1st DCA 2014) (noting conflict among the district courts of appeal post-*Mendenhall* regarding the reach of § 775.087(2)(a)3.), *decision quashed*, 203 So. 3d 142 (Fla. 2016). However, the undersigned did not find any Florida Supreme Court or Third District opinion so holding before petitioner's sentencing and, in any event, the trial court's determination that *Mendenhall* authorized petitioner's sentence binds this habeas court.

Therefore, there is a reasonable argument that counsel could have concluded that this objection would prove futile. Likewise, the trial court reasonably could have concluded that counsel's failure to raise this objection did not prejudice petitioner. *See Hittson*, 759 F.3d at 1262.

In sum, the state courts' rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

I.     Claim Three (Subclaim Six)

Petitioner contends that "trial counsel was ineffective for failing to request a pre-trial competency hearing," which he allegedly asked counsel to do. [ECF No. 41 at 15]. To support this subclaim, petitioner alleges that a psychological evaluation "attached to his motion for downward departure" "indicated that he suffered from a range of serious mental illnesses, such as: Bipolar I Disorder; Posttraumatic Stress Disorder; Generalized Anxiety Disorder; Panic Disorder; Paranoid Personality Disorder; and Personality Disorder." [ECF No. 32 at 23]. This evaluation also indicated that petitioner "had been experiencing nightmares on a daily basis consisting of people shooting at [him] from flying saucers and fighting with a large lizard that never dies." [*Id.* at 24 (alteration in original) (internal quotation marks omitted)]. Further, petitioner contends that a pretrial hearing held on October 1, 2012 shows that he has "mental health problems." [ECF No. 24 at 17].

The trial court rejected this subclaim, holding that petitioner failed to show "a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." [ECF No. 17-4 at 22 (citations omitted)]. The court reasoned:

> Based on the Trial Transcripts in their entirety, the record supports that [petitioner] showed no signs of being incompetent during the actual trial. [Petitioner] answered questions in an appropriate manner, participated in plea negotiations and had meaningful discussions with defense counsel.

[*Id.*]

"A criminal defendant may not be tried unless he is competent . . . ." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citation omitted). "[T]he standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *accord Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

Here, the trial court reasonably rejected this subclaim. The record supports the trial court's finding that petitioner showed no signs of being incompetent during trial, including stating on the record before testifying that he had never been treated for mental illness. [ECF No. 29 at 20 (citing trial transcript and record)]; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Likewise, contrary to petitioner's contention, the transcript of the October 1 hearing undercuts this subclaim. There, counsel stated that, while petitioner "was evaluated by one of [counsel's] experts," "his mental health problems do not give rise to any type of insanity defense" and that he was "very competent." [ECF No. 41

at 27-28]; *see also Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)

("Because legal competency is primarily a function of [the] defendant's role in

assisting counsel in conducting the defense, the defendant's attorney is in the best

position to determine whether the defendant's competency is suspect.").

True, as petitioner alleges, the record does reflect that the psychological

evaluation attached to petitioner's motion for downward departure found that he

suffered from a variety of mental health disorders. *See* [ECF No. 18-8 at 4].

However, "not every manifestation of mental illness demonstrates incompetence to

stand trial; rather, the evidence must indicate a present inability to assist counsel or

understand the charges." *Card v. Singletary*, 981 F.2d 481, 487 (11th Cir. 1992).

Here, petitioner has not made this showing.

For these reasons, the trial court reasonably found that petitioner did not show

signs of incompetency during trial and reasonably concluded that he could not show

prejudice on this subclaim.

In sum, the state courts' rejection of this subclaim was not contrary to, or an

unreasonable application of, clearly established federal law or an unreasonable

determination of the facts.

J.     <u>Claim Four</u>

Petitioner contends that trial counsel ineffectively advised him to decline the

state's alleged 10-year plea offer, incorrectly telling him that he "would be able to

win at trial" because the victim had a criminal record and an alleged motive to testify against him. [ECF No. 8 at 16 -17]. Petitioner adds that, had counsel advised him to accept the alleged 10-year offer and the "likelihood of losing at trial, the outcome of these proceedings would have been different" because he "would have accepted the [alleged] 10-year offer." [*Id.*]

The trial court rejected this claim, finding that the state never made petitioner a 10-year plea offer. [ECF No. 17-4 at 22-23].

This finding was reasonable. On March 4, 2013, at the start of trial, the prosecutor stated that "there [haven't] been any offers" and that she was "allowed to convey" only a 20-year offer. [ECF No. 18-1 at 4]. Petitioner made a counteroffer of time served, which the prosecutor rejected. [*Id.* at 5].

Petitioner contends that the trial court's finding is unreasonable because the transcript of a pretrial hearing on October 1, 2012 shows that the state conveyed a 10-year offer. However, the transcript undercuts his contention. The prosecutor stated that there had been plea negotiations and that the state had made a 25-year offer, but that she did not consider "the defense's [10-year] counter [to be] reasonable." [ECF No. 41 at 24-25].

Petitioner contends that his unadorned statement that "[t]hey talked to me about ten years" shows that the state conveyed a 10-year offer. [*Id.* at 26]. The undersigned disagrees. In the context of the hearing, this statement was a reference

to the defense's 10-year counteroffer, which the prosecutor refused. *See id.* at [24-26].

Furthermore, the transcript reflects that, even had the state made a 10-year offer, petitioner had no interest in accepting it. Defense counsel stated at the hearing that "the only plea [petitioner] would accept [would be] time served" [*id.* at 25], and petitioner expressed the same sentiments [*id.* at 26, 38]. Indeed, right after petitioner stated "[t]hey talked to me about ten years," he added that he "[didn't] want to accept it." [*Id.* at 26].

Furthermore, even had counsel misadvised petitioner to reject a 10-year plea offer, petitioner could not show prejudice on this claim, even under *de novo* review. Where, as allegedly here, misadvice leads to the rejection of a plea offer, "a defendant must show that but for [the misadvice] there is a reasonable probability that . . . the defendant would have accepted the plea." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012). Petitioner cannot so show given his stated willingness to accept only an offer for time served and his "repeated claims of innocence." *Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014) ("[The defendant's] claim that he would have pled guilty had he been properly informed is also undermined by his repeated claims of innocence."). As the state correctly notes, petitioner "maintained his innocence throughout the trial and sentencing proceedings." [ECF No. 37 at 16];

*see also, e.g.*, [ECF No. 18-8 at 29 (petitioner's protestation of innocence at sentencing)].

In sum, claim four lacks merit.

## VI.    Evidentiary Hearing

"[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated [on the merits] by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

Here, petitioner's claims were adjudicated on the merits in state court and, apart from the appellate ineffectiveness claim that should be granted, he has not demonstrated such an error. Thus, an evidentiary hearing is improper.

## VII.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A

timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Here, in view of the entire record, the undersigned denies a certificate of appealability. If petitioner disagrees, he may so argue in any objections filed with the district court. *See* Rule 11(a), Rules Governing § 2254 Cases ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VIII. Recommendations

As discussed above, it is recommended that petitioner's amended § 2254 petition [ECF No. 8] be GRANTED IN PART AND DENIED IN PART, with the following results:

- The amended petition should be GRANTED as to claim two (subclaim two). As a result, the district court should issue a writ of habeas corpus instructing the

Eleventh Judicial Circuit of Florida to vacate petitioner's conviction for attempted second-degree murder in Case No. F10-004216.

- The amended petition should be DENIED as to claim two (subclaim three), claim three (all subclaims), and claim four.

It is further recommended that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this report may be filed with the district court within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district court of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985).

SIGNED this 21st day of February, 2020.

_____

UNITED STATES MAGISTRATE JUDGE

cc:

Pablo Guzman
M85632
South Bay Correctional Facility
Inmate Mail/Parcels
600 U S Highway 27 South
PO Box 7171
South Bay, FL 33493-2233
PRO SE

Douglas James Glaid
Attorney General Office
Department of Legal Affairs
444 Brickell Avenue
Suite 650
Miami, FL 33131
305-377-5441
Fax: 305-377-5655
Email: Doug.Glaid@myfloridalegal.com

Jonathan David Tanoos
Florida Office of Attorney General
3507 E. Frontage Rd., Ste. 200
Tampa, FL 33607-7013
813-287-7900
Fax: 813-281-5500
Email: jonathan.tanoos@myfloridalegal.com

Michael W. Mervine
Office of the Attorney General
Department of Legal Affairs
444 Brickell Avenue, Suite 650
Miami, FL 33131
(305) 377-5441
Fax: (305) 377-5655
Email: CrimAppMia@MyFloridaLegal.com

Noticing 2254 SAG Miami-Dade/Monroe
Email: CrimAppMIA@MyFloridaLegal.com