**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-20220-CIV-ALTONAGA/Reid**

**PABLO GUZMAN**,

      Petitioner,

v.

**MARK INCH**, Secretary,
Florida Department of Corrections,

      Respondent.

_____/

**ORDER**

Petitioner, Pablo Guzman filed a *pro se* Amended Petition Under Title 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 8] on March 3, 2017. The case was originally referred to Magistrate Judge Patrick A. White for a report and recommendation. (*See* [ECF No. 3]). On April 19, 2018, Judge White filed a Report of Magistrate Judge [ECF No. 29]. The case was reassigned to Judge Lisette M. Reid on January 3, 2019. (*See* [ECF No. 45]).

On January 18, 2019, the Court entered an Order [ECF No. 46] staying the case pending the state appellate court's decision on a then-pending successive petition filed by Petitioner. (*See* Jan. 18, 2019 Order 3). Thereafter, the case was reopened on March 14, 2019. (*See* Mar. 14, 2019 Order [ECF No. 51]). On June 13, 2019, the Court entered an Order [ECF No. 52] accepting in part and denying in part Judge White's Report and returning the case to Judge Reid for a supplemental report and recommendation. (*See* June 13, 2019 Order 25–26).

On November 26, 2019, Judge Reid entered a Supplemental Report of Magistrate Judge [ECF No. 53], recommending the Petition be granted in part and denied in part and no certificate

of appealability issue. This Order addresses that Supplemental Report and the several objections filed by the parties.[1]

For the following reasons, the Supplemental Report is rejected in part and adopted in part.

## I. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history of this case, which are detailed in the Supplemental Report. Briefly, the Amended Petition attacks the constitutionality of Petitioner's 2013 judgment of conviction in Case F10-004216, filed in the Eleventh Judicial Circuit of Florida in Miami-Dade County. (*See* Suppl. Report 1).[2]

The Amended Petition sets forth four claims: (1) the trial court violated due process by precluding the defense from commenting on the victim's absence at trial; (2) ineffective assistance of appellate counsel; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of trial counsel by virtue of counsel mis-advising Petitioner to reject a 10-year plea offer. (*See* Am. Pet. 5–18). Claim two describes three instances of alleged ineffective assistance of appellate counsel; and claim three includes seven instances of alleged ineffective assistance of trial counsel. (*See id.* 8–15). Each instance constitutes a "sub-claim." Claim one's and claim two's first sub-claims were previously denied by the Court in the June 13, 2019 Order, are not addressed in the Supplemental Report, and are not reviewed again here. (*See* Suppl. Report 1).

---

[1] Respondent filed Objections ("State's Objs.") [ECF No. 54] on March 6, 2020. Petitioner filed Objections ("Pet'r's Objs.") [ECF No. 55] on March 10, 2020. On March 24, 2020, Petitioner filed a Response to Respondent's Objections ("Pet'r's Resp.") [ECF No. 58]. Respondent filed a Combined Reply to Petitioner's Response and Response to Petitioner's Objections ("State's Reply") [ECF No. 63] on March 11, 2020. On July 2, 2020, Petitioner filed a Response to Respondent's "Combined Reply and Response to Petitioner's Objections" ("Pet'r's Reply") [ECF No. 70].

[2] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all filings.

Petitioner objects to the Supplemental Report's recommendation that the Court deny claim two, sub-claim three; claim three, sub-claims three, five, and seven; and claim four. (*See generally* Pet'r's Objs.). Respondent objects to the Supplemental Report's recommendation the Court grant claim two, sub-claim two. (*See generally* State's Objs.) There are no objections relating to the recommendations regarding claim three on sub-claims one, two, four, and six. The status of Petitioner's claims and sub-claims are detailed in the following chart for ease of reference:

| Claims | Sub-claims | June 13, 2019 Order | Present Suppl. Report's Recommendations | Objections |
|---|---|---|---|---|
| **One: Due Process** | | Denied | | |
| **Two: Ineffective Assistance of Appellate Counsel** | One | Denied | | |
| | Two | | Grant | Respondent |
| | Three | | Deny | Petitioner |
| **Three: Ineffective Assistance of Trial Counsel** | One | | Deny | |
| | Two | | Deny | |
| | Three | | Deny | Petitioner |
| | Four | | Deny | |
| | Five | | Deny | Petitioner |
| | Six | | Deny | |
| | Seven | | Deny | Petitioner |
| **Four: Ineffective Assistance of Counsel regarding Plea Offer** | | | Deny | |

II. **LEGAL STANDARDS**

When a magistrate judge's "disposition" has been properly objected to, district courts must review the disposition de novo. Fed. R. Civ. P. 72(b)(3). The Court employs *de novo* review only with respect to the claims and subclaims subject to objections.

Each of Petitioner's claims subject to *de novo* review is predicated on ineffective assistance of counsel. Consequently, *Strickland v. Washington*, 466 U.S. 668 (1984), requires Petitioner to satisfy two prongs: deficient performance, that is, his counsel's representation fell below an objective standard of reasonableness; and prejudice, that but for the deficiency in representation,

there is a reasonable probability the result of the proceeding would have been different. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 669. Review of counsel's performance is highly deferential. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

### III. ANALYSIS

The Court reviews each of the claims and sub-claims subject to an objection in turn.

### A. Claim Two, Sub-claim Two

Petitioner contends "appellate counsel ineffectively failed to argue the trial court committed fundamental error when it omitted a definition for excusable homicide from the jury instruction for the lesser-included offense of attempted voluntary manslaughter." (Suppl. Report 9 (citing Am. Pet. 8)). Judge Reid agreed and recommended the Court grant the Petition as to this claim. (*See id.* 23–24). Respondent objects, arguing the Supplemental Report "misapplied the prejudice prong of *Strickland* . . . [and] fails to take into account the [Supreme] Court's subsequent [decision in] *Lockhart v. Fretwell*, 506 U.S. 364 (1993)[.]" (State's Objs. 1 (alterations added)). After careful consideration, the Court must agree with Respondent.

*Governing Law*. In finding Petitioner's claim had merit, Judge Reid relied primarily on *State v. Lucas*, 645 So. 2d 425 (Fla. 1994), and correctly summarized the case as follows:

> In *Lucas*, the defendant was convicted of attempted second-degree murder. Although the trial court instructed the jury on the lesser-included offense of attempted manslaughter, "the court failed to explain that [the defendant] could not be found guilty of attempted manslaughter if the evidence showed that the attempted homicide was justifiable or excusable." Defense counsel did not object to the omission. On appeal, the defendant argued that "the court's failure to explain justifiable and excusable homicide as part of the attempted manslaughter instruction was fundamental error, requiring reversal." The district court of appeal agreed and certified the case for review.
>
> The Florida Supreme Court approved the district court's decision. The Court held that "failure to give a complete instruction on manslaughter during the

4

>  original jury charge is fundamental error which is not subject to harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder."

(Suppl. Report 9–10 (alteration in original; citations omitted)).

*Lucas* is predicated on the "jury pardon doctrine," meaning, the "need for [the] jury to be given a fair opportunity to exercise its inherent 'pardon' power by returning a verdict of guilty as to the next lower crime." *Haygood v. State*, 109 So. 3d 735, 748 (Fla. 2013) (Canady, J., dissenting) (alteration added; quotation marks omitted; quoting *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010)). Thus, until recently, if a trial court failed to provide a complete instruction on manslaughter, and the defendant was convicted of manslaughter or a greater offense not more than one step removed, the trial court would have committed fundamental, reversible error.

Judge Reid concluded appellate counsel's failure to argue the trial court committed fundamental error when it omitted the definition of excusable homicide in the jury instructions for attempted voluntary manslaughter constituted both deficient and prejudicial assistance under *Strickland*. (*See* Suppl. Report 9–24). If *Lucas* remained good law, the Court would agree, but current law dictates a different outcome.

As noted in the Supplemental Report, in *Knight v. State*, the Florida Supreme Court "recede[d] from . . . precedent where a finding of fundamental error was predicated on Florida's jury pardon doctrine." 286 So. 3d 147, 154 (Fla. 2019) (alterations added). "Properly understood," the *Knight* court found "the fundamental error test for jury instructions cannot be met where . . . there was no error in the jury instruction *for the offense of conviction* and there is no claim that the evidence at trial was insufficient to support that conviction." *Id.* at 151 (alteration and emphasis added). Thus, if applied to Petitioner's case, *Knight* dictates the Court may only find fundamental error if the trial court erred in instructing the jury on attempted second-degree murder (Petitioner's

5

offense of conviction) and *not* attempted voluntary manslaughter (the lesser included offense of which Petitioner was not convicted).

Judge Reid declined to consider *Knight* because it was not the prevailing law at the time of Petitioner's conviction. (*See* Suppl. Report 16). Judge Reid explained, "*Strickland* requires courts to consider whether there is a reasonable argument that counsel's performance was not deficient. There is no reasonable argument that counsel could have relied on *Knight* in failing to raise the *Lucas* argument on appeal because *Knight* was not in existence in 2014." (*Id.*).

The Court agrees with Respondent (*see* State's Objs. 3–8), that under *Fretwell*, 506 U.S. 364, the foregoing analysis is incorrect. *Fretwell* concerned a habeas petition in a capital case. *See id.* at 366. The district court found the petitioner's[3] counsel was ineffective because at the trial his counsel failed to make an objection which, if made "would have [been] sustained" and "the jury would not have sentenced [the petitioner] to death." *Id.* at 368 (alterations added). The court of appeals affirmed, but the Supreme Court granted a writ of certiorari and reversed. *See id.*

In reversing, the Supreme Court rejected the rule that the law existing at the time of trial should dictate whether the petitioner was prejudiced by counsel's ineffective assistance. *See id.* at 372. The Court explained an analysis of *Strickland* prejudice, "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* (citations omitted). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Importantly, in situations like those underlying *Fretwell* (and the

---

[3] In *Fretwell*, the Supreme Court refers to the petitioner as "respondent." To avoid confusion with the parties in this Order, the Court refers to the *Fretwell* petitioner as the "petitioner."

6

present case) the "substantive or procedural right[s]" to which a petitioner is entitled are those recognized by the *current* rule of law. *Id.* (alteration added)).

To make this point, the Supreme Court distinguished its ruling from an earlier opinion, *Teague v. Lane*, 489 U.S. 288 (1989), which prohibits retroactive application of "new constitutional rules of criminal procedure . . . on collateral review'" to avoid penalizing the *state* "for relying on 'the constitutional standards that prevailed at the time the original proceeding took place.'" *Fretwell*, 506 U.S. at 372 (alteration added; quoting *Teague*, 489 U.S. at 306). The Court explained a federal habeas petitioner, unlike the state,

> has no interest in the finality of the state-court judgment under which he is incarcerated: Indeed, the very purpose of [the petitioner's] habeas petition is to overturn that judgment. Nor does such a petitioner ordinarily have any claim of reliance on past judicial precedent as a basis for his actions that corresponds to the State's interest . . . . *The result of these differences is that the State will benefit from our Teague decision in some federal habeas cases, while the habeas petitioner will not.* This result is not, as the dissent would have it, a "windfall" for the State, but instead is a perfectly logical limitation of *Teague* to the circumstances which gave rise to it.

*Id.* at 373 (alterations and emphasis added).

*Fretwell* neither modifies nor adds an additional requirement to *Strickland*'s prejudice analysis. *See Lafler v. Cooper*, 566 U.S. 156, 166 (2012). Yet, *Fretwell* represents an "unusual circumstance[,]" also present here, "where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry." *Lafler*, 566 U.S. at 167 (alteration added; quotation marks omitted). In *Payne v. Brown*, the Seventh Circuit provides a succinct summary:

> The situation in *Fretwell* was unusual: a federal court of appeals reached an erroneous decision, which it soon overruled. [The petitioner] contended that he received ineffective assistance because his lawyer had failed to take advantage of that decision during the window between its announcement and its overruling. The Justices responded that no one suffers a legal injury when the courts apply the

7

> correct rule of law. That[] [is] what *Fretwell* meant in saying that the defendant had not suffered a fundamentally unfair or unreliable outcome.

662 F.3d 825, 828 (7th Cir. 2011) (alterations added). Although "unusual," the same circumstances are presented here. Like the petitioner in *Fretwell*, Petitioner contends his counsel failed to object to an error the Florida Supreme Court no longer views as fundamental.

*Application*. Determining *Knight* applies to Petitioner's case does not end the Court's inquiry. In his Response to Respondent's Objections, Petitioner argues he is still entitled to a new trial, notwithstanding the inapplicability of *Lucas*, because the trial court "omitt[ed] [] the definition of excusable homicide from the instructions on all offenses, including attempted second-degree murder — the offense of conviction." (Pet'r's Resp. 8 (alterations added; emphasis omitted)). In an April 23, 2019 Order [ECF No. 59], the Court instructed Respondent to respond to Petitioner's argument[4] and comment specifically on section 7.1 (Introduction to Homicide) of the Florida Standard Jury Instructions and the cases Petitioner cited regarding this point.

Section 7.1 (Introduction to Homicide) of the Florida Standard Jury Instructions instructs the reader to "[r]*ead in all murder and manslaughter cases*" the definitions for justifiable and excusable homicide. *Id.* (alteration added; emphasis in original). Thus, the question is whether the trial court's failure to read the definitions for justifiable and excusable homicide contemporaneously with the instructions on second-degree murder was fundamental error.

In this context, it was not. *Knight*, read in conjunction with two earlier cases — *Pena v. State*, 901 So. 2d 781 (Fla. 2005), and *Franco v. State*, 901 So. 2d 901 (Fla. 4th DCA 2005) — guides the Court's conclusion.

---

[4] In addition to contending Petitioner's argument lacks merit (*see* State's Reply 6–13), Respondent states the argument is untimely and was not exhausted in the state court (*see id.* 2–6). Because the Court agrees with Respondent on the merits, it does not address timeliness or whether Petitioner procedurally defaulted.

8

In *Pena*, the Supreme Court of Florida considered whether it was fundamental error for the trial court to omit instructions on excusable and justifiable homicide when instructing the jury on manslaughter where the defendant was convicted of first degree murder and the factual circumstances did not support any jury argument on justifiable or excusable homicide. *See* 901 So. 2d at 782. As noted, *Pena* was decided before *Knight*, which receded from the jury pardon doctrine. The *Pena* court found no fundamental error occurred by virtue of the erroneous instruction, noting: "[w]e agree . . . that in this case the jury would have found nothing useful in these instructions in its determination of whether [the defendant] was guilty of first-degree murder or the next lesser offense of second-degree murder." *Id.* at 787 (alterations added).

Importantly, the court also reasoned the offense of conviction, first degree murder, was more than two steps removed from the offense with the erroneous instruction, manslaughter. *See id.* at 788. Because the offense of conviction was more than two steps removed from manslaughter, the court's decision did not offend the jury pardon doctrine, which, at the time, was embraced by Florida courts. *See id.* at 787–88. Stated otherwise, the trial court's decision did not deprive "the jury . . . [of] a fair opportunity to exercise its inherent pardon power by returning a verdict of guilty as to the next lower crime." *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978) (alterations added; quotation marks omitted).

In *Franco*, the court found no fundamental error where the trial court did not provide the jury with the definitions of justifiable or excusable homicide contemporaneously with the instructions on attempted second degree murder but did find such error in connection with the instruction on manslaughter. *See* 901 So. 2d at 901. The court explained the definitions were necessary to the manslaughter instruction because "manslaughter is a residual offense that can only be fully defined by exclusion of the properly explained defenses of excusable and justifiable

9

homicide." *Id.* at 903 (quotation marks and citation omitted). *Franco* informs the Court that while a manslaughter instruction is always incomplete without the definition of excusable homicide, the same cannot be said for every attempted second-degree murder instruction.

Taken together, *Pena* and *Franco* demonstrate three principles: (1) a jury must be provided with the definitions of justifiable and excusable homicide to understand the instructions on manslaughter; (2) in contrast, the foregoing definitions are not always necessary to instructions on attempted first[5] or second degree murder; and (3) assuming Florida courts embrace the jury pardon doctrine, a jury convicting a defendant of a higher offense once-removed from attempted manslaughter (as the jury did here), must be provided with the complete instructions on attempted manslaughter, including the foregoing definitions.[6]

*Knight*, however, rejects the third principle by announcing the Florida Supreme Court recedes from "precedent where a finding of fundamental error was predicated on Florida's jury pardon doctrine." 286 So. 3d at 154. *Knight* leaves the undersigned with the first two principles: the definitions of justifiable and excusable homicide are necessary to instructions on attempted manslaughter, but not always to instructions on attempted second-degree murder. And here, Respondent makes clear "the evidence did not permit a reasonable inference that Petitioner committed the shooting by accident or misfortune." (State's Reply 12 (citing Fla. Stat. § 782.03)).

---

[5] *Pena* concerned a conviction for first degree murder, not attempted first degree murder, but this distinction does not affect the Court's analysis.

[6] The Court previously recognized that *Pena* and *Franco* are distinguishable from this case (*see* June 13, 2019 Order 17–18), but the points which distinguish these cases relied on the jury pardon doctrine (*see id.*). Because the Florida Supreme Court has receded from the jury pardon doctrine, the distinguishable aspects of *Pena* and *Franco* no longer inform the Court's analysis.

Therefore, the Court does not accept the recommendation it issue a writ of habeas corpus to the Eleventh Judicial Circuit of Florida to vacate Petitioner's conviction for attempted second-degree murder.

**B.     Claim Three, Sub-claim Seven**

In this sub-claim — a variation of claim two, sub-claim two (the preceding claim addressed by this Order) — Petitioner contends *trial* counsel was ineffective in failing to object to the omission of excusable homicide from the jury instructions on attempted voluntary manslaughter. (*See* Am. Pet. 15). Judge Reid disagreed, reasoning "the evidence [at trial] did not permit a reasonable inference [] [P]etitioner committed the shooting by accident or misfortune." (Suppl. Report 26 (alterations added)). Judge Reid rejected the notion her conclusion is inconsistent with the (erroneous) conclusion *appellate* counsel was ineffective by failing to argue the trial court committed fundamental error in connection with the attempted voluntary manslaughter instruction. (*See id.* 26–27).

Petitioner objects,[7] arguing (1) "[t]here is no question the trial court did not instruct the jury on excusable homicide[;]" (2) "the court did not provide a definition of excusable homicide in any other instruction[;]" and (3) under *Arteaga*, 246 So. 3d 533, "a failure to object to an incomplete instruction where the defendant is convicted of manslaughter or a greater offense one step removed — the failure to give such an instruction being fundamental error — is remediable in a rule 3.850 ineffectiveness motion." (Pet'r's Objs. 5–6 (alterations added; emphasis and quotation marks omitted)).

---

[7] Petitioner also contends he received ineffective assistance of counsel because "no [excusable homicide] instruction [was] given and the evidence at trial would have supported a defense of . . . excusable homicide," (Pet'r's Objs. 5 (alterations added; quoting *Arteaga v. State*, 246 So. 3d 533, 537 (Fla. 2d DCA 2018)), but he does not elaborate on this argument (*see id.*).

11

As discussed with respect to claim two, sub-claim two, "the failure to give such an instruction" (*id.* 6 (emphasis and quotation marks omitted)) in this case was not fundamental error. Petitioner's claim thus fails.

**C.    Claim Two, Sub-claim Three; and Claim Three, Sub-claim Three**

Petitioner contends (1) "appellate counsel was ineffective by failing to argue the [t]rial [c]ourt committed fundamental error when it instructed the jury on [the] independent forcible felony exception to self-defense" (Am. Pet. 8 (alteration added; emphasis omitted)), and (2) trial counsel was ineffective for failing to object to the same instruction at trial (*see id.* 13).

The Magistrate Judge correctly explained under Florida law the use of deadly force is justifiable only if the defendant "reasonably believes that it is necessary to prevent 'imminent death or great bodily harm to himself or another.'" (Suppl. Report 27 (quotation marks omitted; quoting *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017); other citation omitted)). This rule is subject to the "forcible felony exception" meaning the use of deadly force is *not* justifiable if it is used while the defendant is "attempting to commit, committing, or escaping after the commission of, a forcible felony[.]" *Pinkney*, 876 F.3d at 1295 (alteration added; citation and quotation marks omitted). For the "forcible felony exception" to apply, the "felony" must be *independent* from the one for which the defendant claims self-defense. *Id.* at 1295–96. Stated differently, the forcible felony exception does not apply to a person who uses deadly force when attacked by another, if he is otherwise acting lawfully; whereas the forcible felony exception may apply to a bank robber who uses deadly force when attacked by another while the robber is fleeing from a felony robbery.

Petitioner contends the trial court erred in reading the forcible felony instruction because he was not charged with a crime separate from the attempted murder of Nelson Puente, for which

12

he claimed self-defense. (*See* Am. Pet. 9). Petitioner is correct the forcible felony exception instruction was inapplicable to his case because he was only charged with one crime. Petitioner did not persuade the Magistrate Judge the erroneous instruction was fundamental, or that appellate counsel was ineffective in failing to argue as much on appeal. The Court is similarly unpersuaded.

The forcible felony instruction read at Petitioner's trial *was* confusing. The instruction read:

> [The] use of deadly force is justifiable only if [Petitioner] reasonably believe[d] that force [was] necessary to prevent eminent [sic] death or great bodily harm to himself while resisting [1] another attempt to murder him or [2] [Petitioner] *was attempting to commit, committing or escaping after the commission of attempted first degree murder with a deadly weapon or aggravated battery*.

(Suppl. Report 28 (alterations and emphasis added; quoting Mar. 8, 2013 Trial Tr. [ECF No. 18-7] 786:6–13)).[8] But the instruction did not, as Petitioner contends, "negate[]" Petitioner's defense that he was justified in using deadly force, nor did the instruction deprive Petitioner of a fair trial. (Am. Pet. 9 (alteration added)); *see also Martinez v. State*, 981 So. 2d 449, 454–56 (Fla. 2008) (finding the forcible-felony instruction on self-defense was not warranted, but the reading of the instruction was not fundamental error as it did not deprive the defendant of a fair trial). On the contrary, the instruction seems to be erroneous in a way that would *benefit* Petitioner as it allowed the jury to find the use of force justifiable if Petitioner "*was attempting to commit . . . attempted first degree murder with a deadly weapon or aggravated battery.*" (Suppl. Report 28 (alteration added; emphasis in original; citation omitted)).

Quoting *Reeves v. State*, Petitioner argues "[a] misleading jury instruction constitutes both fundamental and reversible error[.]" (Pet'r's Objs. 3 (alterations added; quoting 647 So. 2d 994, 995 (Fla. 2d DCA 1994); other citation omitted)). In *Reeves*, however, the jury instruction was

---

[8] Citations to trial transcripts rely on the pagination and line numbering in the original document.

misleading in a manner detrimental to the defendant's case.[9] The same rationale is not applicable here, where the misleading jury instruction could only have helped Petitioner's cause.

At bottom, although the foregoing forcible felony exception instruction was unnecessary and confusing, the Court is not persuaded (1) the outcome of Petitioner's trial would have been different had Petitioner's counsel objected to the instruction, or (2) the result of Petitioner's appeal would have been different had his appellant counsel argued the trial court committed fundamental error by including the instruction. Thus, the Court agrees with Judge Reid — Petitioner's claims fail under *Strickland*'s highly deferential standard.

**D.     Claim Three, Sub-claim Five**

Petitioner contends trial counsel was ineffective where he "failed to object to the imposition of an illegal sentence." (Am. Pet. 13 (emphasis removed)). The Magistrate Judge found Petitioner's argument persuasive, but nonetheless rejected it, finding the court was bound by the state post-conviction court's decision on this point. (*See* Suppl. Report 38–39 (noting the validity of Petitioner's arguments but also stating a habeas court's inability to break from then-existing state court interpretations of state law)).

Two statutes are relevant here. First, under section 775.087(2)(a)3, Florida Statutes, if an individual commits a felony, including attempted second-degree murder, and in the course of doing so discharges a firearm resulting in "death or great bodily harm," then "the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison." *Id.* Under section 775.082(3)(b)1, Florida Statutes, an individual convicted of a first-degree felony shall be sentenced to a "term of imprisonment not

---

[9] In *Reeves*, the trial court instructed the jury the defendant's knowledge an accident resulted in death or injury was *not* "an essential element of willfully leaving the scene of an accident." *Reeves*, 647 So. 2d at 995 (citation omitted).

14

exceeding **30 years** or, when specifically provided by statute, by imprisonment for a term of years not exceeding life imprisonment." *Id.* (emphasis added).

Although the latter statute appears to prohibit Petitioner's 40-year sentence, the state post-conviction court rejected this argument. (*See* Order Denying [Petitioner]'s Motion for Post-Conviction Relief ("State Post-Conviction Order") [ECF No. 17-4] 20). Citing *Mendenhall v. State*, 48 So. 3d 740, 743 (Fla. 2010), the state post-conviction court concluded "the trial court has discretion, under Florida Statute 775.087(2)(a)(3) to sentence a defendant, who was found guilty of attempted second degree murder with the jury finding of great bodily harm, between twenty-five (25) years to the maximum of life, even though traditionally the statute should have been capped at thirty (30) years state prison." (State Post-Conviction Order 22).

The Court does not find *Mendenhall* particularly instructive. In *Mendenhall*, the jury convicted the defendant of attempted second-degree murder with a firearm. *See* 48 So. 3d at 743. "The jury also found that during the commission of the offense, [the defendant] was in possession of a firearm, discharged a firearm, and inflicted serious bodily injury." *Id.* (alteration added). The defendant was sentenced to a mandatory *minimum* of 35-years' imprisonment pursuant to section 775.087, Florida Statutes. *See id.* at 744.

The question before the Florida Supreme Court was whether "the mandatory minimum terms of twenty-five years to life [under section 775.087, Florida Statutes] provide the trial judge with discretion to impose a mandatory minimum of twenty-five years to life *without regard to the statutory maximum* [of 30 years] for the crime contained in section 775.082, Florida Statutes (2004)." *Id.* at 742 (alterations and emphasis added). The court answered in the affirmative, finding "the Legislature intended for trial courts to have discretion to impose a mandatory *minimum* under section 775.087(2)(a)(3)" ranging from 25 years to life, "notwithstanding the

15

statutory maximum of thirty years contained in section 775.082[.]" *Id.* at 750 (alteration and emphasis added).

Here, unlike the defendant in *Mendenhall*, Petitioner was sentenced to a mandatory minimum of 25-years' imprisonment under section 775.087, Florida Statutes, a term lower than the statutory maximum of 30 years under section 775.082. Having exercised its discretion in the first instance to sentence Petitioner to a term below the statutory maximum, the court would appear to be prevented from subsequently imposing a sentence exceeding the statutory maximum of 30 years under section 775.082. *See Sheppard v. State*, 113 So. 3d 148, 149 (Fla. 2d DCA 2013). In *Sheppard*, the defendant "argu[ed] [] his . . . overall sentence of thirty-five years' imprisonment exceed[ed] the statutory maximum and [was] illegal." *Id.* at 148–49 (alterations added). Agreeing with the defendant, the court reasoned:

> Although the trial court had the discretion to impose a mandatory minimum of up to life in prison, the court chose to impose a mandatory minimum term that was less than the thirty-year statutory maximum for [the defendant's] offense. ***Having done so, the court had no discretion to exceed the statutory maximum of thirty years***. The postconviction court's interpretation of *Mendenhall* . . . in denying the claim is incorrect.

*Id.* at 149 (alterations and emphasis added). The Florida Supreme Court has since adopted the position in *Sheppard* upon facts like those in Petitioner's case. *See Hatten v. State*, 203 So. 3d 142, 145 (Fla. 2016) (remanding for resentencing where the defendant was sentenced to a term of 40 years with a 25-year mandatory minimum, reasoning the sentencing court had no authority to impose an additional term of years beyond a 30-year statutory maximum after imposing a sub-30-year minimum mandatory sentence).

Judge Reid declined to consider *Sheppard*, finding the "trial court's determination that *Mendenhall* authorized [P]etitioner's sentence binds this habeas court[,]" and "there is a reasonable argument that [Petitioner's counsel] could have concluded that this objection would prove futile."

16

(Suppl. Report 39 (alterations added)). Petitioner objects, arguing his trial counsel could have relied upon the "express interpretation of *Mendenhall* in *Sheppard* . . . to object to Petitioner's illegal sentence." (Pet'r's Objs. 7 (alteration added)). Petitioner further contends "the absence of a Florida Supreme Court or Third District case does not foreclose the possibility that the trial court would have found the Second District's interpretation of *Mendenhall* persuasive." (*Id.* 8).

The Court agrees with Petitioner his counsel could have raised an objection relying on *Sheppard*, but it does not agree counsel's failure to do so constitutes ineffective assistance under *Strickland*. Petitioner correctly recognizes that under *Strickland*, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Given the state post-conviction court interpreted *Mendenhall* differently from the court in *Sheppard*, the Court cannot find there was a "reasonable probability" Petitioner's counsel's objection would have been successful.

Indeed, the state post-conviction court's reasoning indicates that, at the time of Petitioner's sentencing, the objection may not have been successful. That the Florida Supreme Court has since adopted the position in *Sheppard* does not mean trial counsel was ineffective so much as it means the state post-conviction court interpreted *Mendenhall* in a way no longer accepted by the Florida Supreme Court. Stated otherwise, Petitioner's counsel's failure to raise an objection based on *Sheppard*, a limited opinion from the Second District Court of Appeals that was not yet embraced by the Florida Supreme Court, does not meet *Strickland*'s highly deferential standard. This is especially so because, in the context of a section 2254 petition:

> *Strickland*-based deference concerning a lawyer's performance is doubled — compounded. A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness

of the state court's decision. The question, therefore, is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Knight v. Fla. Dep't of Corr.*, 958 F.3d 1035, 1045 (11th Cir. 2020) (alteration adopted; citations and quotation marks omitted).

Finding fair-minded jurists *could* disagree on the correctness of the state court's decision, the Court thus agrees with the outcome of Judge Reid's analysis on this ground.

**E.    Claim Four**

Petitioner argues trial counsel was ineffective when he advised him to decline the State's alleged 10-year plea offer. (*See* Am. Pet. 16–18). Judge Reid disagreed, noting at an October 1, 2012 pretrial hearing (*see* Oct. 1, 2012 Hr'g Tr. [ECF No. 41] 22–48), the State made Petitioner a 25-year offer and did not consider the Petitioner's 10-year counteroffer to be reasonable. (*See* Suppl. Report 43 (citing Oct. 1, 2012 Hr'g Tr. 3:24–4:7)). Judge Reid also concluded Petitioner fails to establish he would have accepted a 10-year plea offer if given proper advice because Petitioner maintained he was innocent throughout the trial and sentencing proceedings. (*See id.*).

Petitioner objects, arguing his contention he was offered a 10-year deal is not "conclusively refut[ed.]" (Pet'r's Objs. 9 (alteration added)). Petitioner points to the pretrial hearing, where in response to the court's instruction Petitioner "[t]alk to [his] attorney about plea offers[,]" he stated "[t]hey talked to me about ten years. I don't want to accept it." (Oct. 1, 2012 Hr'g Tr. 5:19–22 (alterations added)). According to Petitioner, his statement "they talked to me about ten years . . . proves that a 10-year offer was in fact extended." (Pet'r's Obj.'s 9 (alteration added)).

In the context of a rejected plea offer, the *Strickland* prejudice prong requires a defendant show "that but for counsel's ineffectiveness: (1) the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have

18

withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (citations and quotation marks omitted). The Court agrees with Judge Reid that the record does not support Petitioner's contentions (1) a 10-year plea deal was offered in the first instance, or (2) Petitioner would have accepted the plea deal had it been offered.

First, it is unclear who "they" are in Petitioner's statement "[t]hey talked to me about ten years" (Oct. 1, 2012 Hr'g Tr. 5:21 – 22 (alterations added)), because "they" could refer to his own lawyer. This is especially so in light of the prosecutor's earlier statement, "[Petitioner] came with a counter of ten years. At this point in time, we do not think that is reasonable . . . and so we are rejecting that counteroffer" (*id.* 4:4–7 (alterations added)). Moreover, the record shows that had Petitioner been offered a 10-year deal, he would have declined to accept it. (*See id.* 5:22).

In short, Judge Reid correctly recommended denying habeas relief on this ground.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Supplemental Report **[ECF No. 53]** is **ACCEPTED** in part and **REJECTED** in part. Petitioner, Pablo Guzman's Amended Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus by Person in State Custody **[ECF No. 8]** is **DENIED**. A certificate of appealability shall not issue.

**DONE AND ORDERED** in Miami, Florida, this 4th day of September, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record